■ In the Matter of LORETTA D., Appellant, v COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK et al., Respondents.—In a child custody proceeding pursuant to Family Court Act article 6, the petitioner appeals from an order of the Family Court, Kings County (Lubow, J.), dated March 12, 1991, which granted the motion of the respondent Little Flower Children's Services to dismiss the petition in its entirety on the ground of lack of standing.

Ordered that the order is modified, by deleting the provision thereof which granted that branch of the motion which was to dismiss so much of the petition as sought visitation, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed, without costs or disbursements, and the matter is remitted to the Family Court, Kings County, for a hearing, before a different Judge of the Family Court, to determine if visitation with the petitioner is in the child's best interests.

The child, Anthony P., was born on April 7, 1987. Because the natural mother Angela P. was an admitted drug user, and the child tested positive for cocaine, the respondent Commissioner of Social Services of the City of New York (hereinafter the Commissioner), commenced a permanent neglect proceeding in May 1987. After a hearing pursuant to Social Services Law § 384-b, the Family Court found that Anthony P. was a

permanently neglected child. Pursuant to an order of the Family Court, dated June 28, 1990, made after a dispositional hearing, legal custody and guardianship of the child Anthony P. was transferred from the natural mother to the Commissioner and Little Flower Children's Services (hereinafter Little Flower), an authorized agency, with power to place the child for adoption without further consent of the natural mother. Since on or about November 3, 1989, the child has been in the same preadoptive foster home, and an adoption proceeding has been commenced by the foster parent in the Family Court, Queens County, where the foster parent resides.

The petitioner is the alleged putative paternal grandmother of the child Anthony P. In support of her petition, the petitioner alleged that her son, who was murdered on or about October 28, 1988, was the father of the child. At the father's funeral, the natural mother allegedly did not tell the petitioner that the child Anthony P. was in foster care because she was in a state of grief. It was only in June 1990 at the trial of the alleged murderer, that the petitioner first learned that the natural mother did not have custody of Anthony, and that Anthony was in foster care.

In further support of the petition, the petitioner submitted an affidavit from the natural mother, Angela P., dated February 1, 1991, attesting, *inter alia,* that the petitioner's son was the father of her child Anthony P. *(see,* Social Services Law § 384-c [2] [f]). In addition to these uncontradicted affidavits from the petitioner and the natural mother, the record indicates that (1) the neglect petition filed by the Commissioner in May 1987 listed the petitioner's son as the "Put" (putative) father of the child Anthony P. and (2) a Petition for Extension of Placement dated December 5, 1988, listed the petitioner's deceased son as the "Father" of the child Anthony P. Indeed, this documentary evidence corroborates the natural mother's statement in her affidavit that after her son was taken from her shortly after birth, she informed the respondents that the petitioner's son "was the father of the child". Under these circumstances, the petitioner established that her deceased son was the father of the child Anthony P.

Having decided this threshold issue, it is clear that the petitioner had standing to seek visitation rights with her grandchild *(see, Matter of Emanuel S. v Joseph E.,* 78 NY2d 178).  Indeed, Domestic Relations Law § 72, originally enacted in 1966, has always provided that a grandparent has standing to seek visitation rights with a grandchild when the grandparent's child has died *(see also,* Family Ct Act § 651 [b]).

Nor is the grandparent's standing to seek visitation rights with the grandchild in any way negated by the fact that the child has been freed for adoption *(see, People ex rel. Sibley v Sheppard,* 54 NY2d 320; *Matter of Nefta P.,* 115 AD2d 390). Of course, the ultimate test in determining whether a court should allow visitation to the grandparent in this situation is the "best interest of the child" (Domestic Relations Law § 72). Accordingly, the instant matter must be remitted to the Family Court, Kings County, for a hearing to determine the best interest of the child.

We have reviewed the petitioner's remaining arguments concerning the issues of custody and adoption and are of the view that they are unavailing under the circumstances presented *(see, Matter of Peter L.,* 59 NY2d 513, 520; *Matter of Smith v Lascaris,* 106 Misc 2d 1044). Mangano, P. J., Thompson, Bracken and Copertino, JJ., concur.